## C. E. GIBSON v. THE STATE.

### No. 4834. Decided May 15, 1918.

**Burglary—Custody—Escape—Voluntary Return.**

Where, upon appeal from a conviction of burglary, it appeared from the record that the appellant had effected his escape from jail while his case was pending in this court, and that he did not voluntarily return or offer to do so, the appeal must be dismissed on motion of the State. Following Lunsford v. State, 10 Texas Crim. App., 118, disapproving Leonard v. State, 53 Texas Crim. Rep., 187.

Appeal from the District Court of Hale. Tried below before the Hon. R. C. Joiner.

Appeal from a conviction of burglary; penalty, two years in the penitentiary.

*W. W. Kirk,* for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.

PRENDERGAST, JUDGE.—Appellant was convicted of burglary on August 31, 1917, and his punishment assessed at two years in the penitentiary.

He perfected his appeal to this court on September 22nd. His appeal bond was fixed at $1500.

He was first arrested by the sheriff of Hale County and placed in jail on June 3rd on a charge of swindling. His bond on that case was fixed at $1000. He was unable to give it and was held in jail by the sheriff continuously thereafter except when he effected his escapes from jail as hereinafter stated.

The Assistant Attorney General has filed a motion to dismiss this appeal because appellant broke jail and escaped after his appeal and did not voluntarily return, and, therefore, this court has no jurisdiction. Appellant resists this motion and claims that he broke jail and escaped "for the purpose of getting out to his uncle's for the purpose of seeing about making an appeal bond (in this case), or why the bond had not been made, with the intention of returning to said jail."

Before stating the facts, the law applicable will be given. Before 1876 the authority of the court to dismiss and reinstate a case because of an escape pending appeal was in the sound discretion of the appellate court. There was no statute on the subject. (Moore v. State, 44 Texas, 595.)

On August 21, 1876, page 217, the Legislature for the first time enacted "that in case the defendant shall make his escape from prison during the pending of the appeal then the jurisdiction of the appellate court shall no longer attach in the case; and upon the fact of such escape being made to appear, the court shall, on motion of the Attorney General or counsel for the State, dismiss the appeal"; thereby removing all

discretion the court formerly had. This Act was held constitutional and valid (Gresham v. State, 1 Texas Crim. App., 458, and other cases). Said Act made no provision for a reinstatement of the appeal in the event of the voluntary return.

In Young v. State, 3 Texas Crim. App., 384, it was shown that in October, 1877, he was convicted of a felony and appealed. On December 12th the Assistant Attorney General made a motion to withdraw the submission and to dismiss the appeal because appellant had escaped from custody on December 8th. The motion was granted and the appeal dismissed on December 12th. On December 19th he made a motion to set aside this dismissal and reinstate the case because on December 17th, without having been arrested by anyone, he voluntarily returned and surrendered himself to the custody of the sheriff and was then safely confined in the jail to await the decision of his case by this court. His affidavit to the above effect was supported by the affidavits of the sheriff and one of his deputies. There were other matters in the respective affidavits but are unnecessary to here state. It is thus seen that he voluntarily returned and surrendered within ten days of his escape and that after his surrender he was held in jail. This was the first case decided by this court after said Act of 1876.

This court therein held: "We are of opinion that it would be dangerous precedent, and one which would tend utterly to abrogate the provisions of the law with regard to escapes, for this court to exercise the authority of granting the proposed relief under the circumstances of this case. The law is 'that, in case the defendant shall make his escape from prison during the pending of an appeal, then the jurisdiction of the appellate court shall no longer attach in the case; and, upon the fact of such escape being made to appear, the court shall, on motion of the Attorney General or counsel for the State, dismiss the appeal.' Act 1876, p. 217.

"The dismissal of the case put an end to the jurisdiction of this court over it, and no good cause has been shown why (if possible after it is once lost) we should resume it again. It may appear to be a hardship upon appellant, but if so, it is one for which no one is responsible or blamable but himself."

The next case decided under said Act was Brown v. State, 5 Texas Crim. App., 126, wherein it was shown that Brown was convicted of a felony in July, 1878, and appealed. On October 30, pending appeal the Assistant Attorney General moved to dismiss the case because appellant had escaped. On that date this court granted the motion and dismissed the case in compliance with said Act of August 21, 1876. On November 18, 1878, Brown made a motion to set aside the dismissal and reinstate the case, clearly showing by the affidavit of two deputy sheriffs that he had voluntarily returned and surrendered to the sheriff and was then in jail. The report of the case does not state the number of days elapsing between his escape and return, but says that the facts are strikingly similar to those in the Young case. Hence we think it

clear that he returned and surrendered within ten days from his escape. In the opinion written by Judge White the court quotes said Act of 1876 and says:

"It follows that a party who had appealed in a felony case, and who effects his escape during the pendency of his appeal does so at his peril. He, by his own act, deprives this court of its jurisdiction of his case; and when that fact has been made to appear, and his case has been dismissed, this court has no further power or control over it"; and overruled the motion to reinstate.

Soon after these decisions the Legislature by an Act of February 21, 1879, in adopting the codes as reported by the revisers, enacted articles 912 and 913 of the C. C. P., which are as follows:

"Article 912. When Defendant Escapes, Pending an Appeal.—In case the defendant, pending an appeal in a felony case, shall make his escape from custody, the jurisdiction of the Court of Criminal Appeals shall no longer attach in the case; and, upon the fact of such escape being made to appear, the court shall, on motion of the Attorney General, or attorney representing the State, dismiss the appeal; but the order dismissing the appeal shall be set aside, if it shall be made to appear that the accused had voluntarily returned to the custody of the officer from whom he escaped, within ten days."

"Article 913. Sheriff Shall Report Escape, Etc.—When any such escape of a prisoner occurs, the sheriff who had him in custody shall immediately report the fact, under oath, to the district or county attorney of the county in which the conviction was had, who shall forthwith forward such report to the Attorney General at the court to which the transcript was sent; and such report shall be sufficient evidence of the fact of such escape to authorize the dismissal of the appeal."

Then for the first time this court was given power to reinstate a dismissed case because of escape, solely by showing voluntary return within ten days.

The first case decided by this court under said articles was Lundsford v. State, 10 Texas Crim. App., 118. Pending appeal therein appellant escaped and was recaptured the same day. The Assistant Attorney General made a motion to dismiss the appeal because of escape. In the opinion therein this court quoted article 894, C. C. P., which gives every convicted person the right to appeal "under the rules hereinafter prescribed," and also stated that said article 912 was one of these rules, and through Judge Hurt, who wrote the opinion, held:

"This is the first case arising under the Code of Criminal Procedure, as amended or changed, calling for a construction. We hold, that under this rule prescribing the defendant's right to appeal, the jurisdiction of the Court of Appeals, although having once attached, was lost by the escape; that the jurisdiction of this court ceased to attach upon the escape of the appellant. And in order for it to reattach, the appellant must voluntarily return into custody within ten days. The State would not be required to wait the expiration of the ten days before making

an effort to capture the prisoner, the presumption being that the prisoner, having escaped, would not voluntarily return into custody. Holding that the escape, ipso facto, ousted this court of the jurisdiction of the appeal, and that nothing save a voluntary return to custody could reinvest the court with jurisdiction, we conclude that the motion of the Assistant Attorney General is well taken," and dismissed the case.

The law as thus held has been adhered to ever since in a great number of cases, some of them collated in 2 Vernon's Criminal Statutes, page. 875; some of these and others also cited in 1 Branch's Ann. P. C., sec. 591. The law as thus enacted and held by this court has been adhered to down to this very day as shown by Presiding Judge Davidson's opinion in Gilbert v. State, 203 S. W. Rep., 892, handed down on May 1, 1918.

Said motion of the Assistant Attorney General to dismiss is supported by the affidavits of J. C. Terry, sheriff of Hale County; W. W. Jeffus, his deputy, and D. M. Thomas, a private citizen. These affidavits show that the sheriff first arrested appellant on June 3, 1917, on a charge of swindling. That his bond therein to await action by the grand jury was fixed by the examining court at $1000. That appellant was unable to make that bond and hence was placed and held in jail by the sheriff. That on June 8th appellant made his escape from jail; that as soon as the sheriff learned it he and said deputy and a posse of citizens began a search for him to capture him. The sheriff offered a reward of $25 for his capture. That upon breaking jail he left on foot. When captured by the sheriff of Oldham County on June 17 he had worked his way north about 120 miles. When captured he was in possession of a horse and saddle. Later he was indicted in Swisher County in two indictments for the theft of said horse and saddle which were alleged to have been stolen after his escape and before his capture. That the sheriff of Hale County got appellant from the sheriff of Oldham County soon after his capture and brought him back and again placed him in the Hale County jail.

That on August 11th the grand jury of Hale County returned two indictments against appellant, one for the burglary of the residence of W. E. Hunt and the other for the burglary of the residence of Basil Fruin, both offenses alleged to have been committed after his escape on June 8th and before his said capture by the sheriff of Oldham County. That on August 25th said grand jury returned an indictment against him on said original charge of swindling.

That on August 30th appellant was tried on said charge of burglary of Fruin's residence, this case, and he was convicted and his punishment assessed as stated. The appeal bond was fixed at $1500. Upon his conviction he was again placed in the sheriff's custody and confined by him in the jail.

The facts and circumstances of his escape and capture, after his appeal herein, was shown to be as follows: That on October 1st he made his escape from jail by breaking the locks and opening the doors with

iron rods evidently placed in the jail from the outside by unknown persons. That he with other prisoners got out about 10:30 o'clock in the morning while the jailer and sheriff's force were away. That im-mediately upon learning of the escape the sheriff offered a reward of $25 for the capture of each escaped prisoner. Thereupon a number of citizens joined the officers in the chase for the escaped prisoners. That about 5 o'clock that evening appellant and another prisoner, Tom Duke, who had been convicted for arson and his punishment assessed at five years, and who on this occasion made a final getaway, were found in a cornfield about a mile and a half from the city limits. When dis-covered they were hiding under some weeds with their shoes off. They jumped up and ran. Appellant stopped long enough to slip on his shoes without fastening them, while Duke ran without his. They ran in different directions. The persons discovering appellant chased him for several hundred yards. He was gaining on them and about to make his getaway when, while looking back at his pursuers he ran into another group of men, who captured and brought him back. That appellant, in the presence of said affiants and other citizens of the city, said that he and Duke had planned to stay in the cornfield hid until night and then make a final effort to escape. That he would have gotten away that time if he had not stopped long enough to put on his shoes when first discovered, and had run without them as Tom Duke did, who was not captured. That appellant did not voluntarily return, but was cap-tured while trying to get away as stated.

To his resistance of the State's motion he has attached affidavits of himself, his attorney and some others. In neither of them is the fact of his escapes, as substantially stated by the sheriff, his deputy, and Thomas denied or disputed. Nor are the facts of the various indict-ments stated by the sheriff against him denied or disputed. Nor what he stated to those parties and other citizens at the time of his flight when discovered hidden and his statement of why he did not get away at the time. But he claims in his affidavit that his breaking jail and escaping on October 1st was "for the purpose of going out to his uncle's for the purpose of seeing about the appeal bond or why the bond had not been made, with the intention of returning to said jail." These affidavits are about other collateral matters also.

The sheriff and his deputy by another affidavit stated that at the time and before appellant's said escape on October 1st, he, appellant, well knew that his uncle and brother could not make bond for him. That at the time he was held under four separate and distinct cases. The bond in each of three of them was $500 and in this case $1500, aggre-gating $3000. That when he was first placed in jail on said charge of swindling and his bond fixed at $1000 that his uncle and brother at that time tried to make that bond for him but could not. That neither of them were tax payers and appellant knew neither of them would be accepted on any bond. That during the time he was trying to make said $1000 bond his father, who lived without the State, came down and

spent a number of days trying to make it but could not. That his uncle and brother lived in Hale County and had often been to see appellant while he was in jail and appellant well knew that he could see them at any time he wanted to. That the sheriff or some of his deputies would have sent for them at any time he made such request. That neither his brother nor uncle owned land and had nothing subject to execution, and appellant well knew this, as the matter had been talked in his presence when they were trying to make his said $1000 bond, and he well knew that before his said escape they had made all possible efforts to secure a bond for him but had failed.

Upon the thorough consideration of all the affidavits it is clearly shown that appellant escaped on October 1st while his case was pending on appeal in this court. That he did not voluntarily return or offer to do so. That his purpose in escaping was not to see his uncle about making his appeal bond and that he had no intention of voluntarily returning but that, on the contrary, his intention was to make his getaway and not return to jail.

So that under the law and facts the State's motion to dismiss is well taken.

Appellant cites and relies only upon Leonard v. State, 53 Texas Crim. Rep., 187. That case is directly in conflict with the other well considered cases by this court and is directly in conflict with the plain provisions of the statute. Even that opinion states that "we have had some doubt as to whether we ought to dismiss the appeal." However that may be, that case is inapplicable to this, for therein it was shown, and seems not to have been controverted, that appellant escaped with no intention of going away but solely and only for the purpose of getting out to make bond and with the intention of surrendering himself to the due process of law. In this case, while appellant made such a claim, the facts are directly against him and show the reverse of his contention. Therefore this court has no jurisdiction of his case and it is dismissed.

*Dismissed.*